IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

STACIE L. JONES,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C13-0036

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.   PROCEDURAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.  PRINCIPLES OF REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

IV.   FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
      A.   Jones' Education and Employment Background  . . . . . . . . . . . . .  5
      B.   Administrative Hearing Testimony  . . . . . . . . . . . . . . . . . . . . . . .  5
           1.   Jones' Testimony  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
           2.   Vocational Expert's Testimony  . . . . . . . . . . . . . . . . . . .  7
      C.   Jones' Medical History  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

V.    CONCLUSIONS OF LAW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
      A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . . . .  11
      B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . . . .  14
           1.   Dr. Sigurdsson's Opinions  . . . . . . . . . . . . . . . . . . . . . .  15
           2.   Credibility Determination  . . . . . . . . . . . . . . . . . . . . . .  17

VI.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

VII.  ORDER  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Stacie L. Jones on April 15, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Jones asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Jones requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On January 5, 2010, Jones applied for disability insurance benefits. The following day, on January 6, she applied for SSI benefits. In both applications, Jones alleged an inability to work since January 1, 2008 due to back problems, esophageal problems, and bowel problems. Jones' applications were denied on February 9, 2010. On October 6, 2010, her applications were denied on reconsideration. On November 9, 2010, Jones requested an administrative hearing before an Administrative Law Judge ("ALJ"). On January 23, 2012, Jones appeared via video conference with her attorney before ALJ John E. Sandbothe for an administrative hearing. Jones and vocational expert Melinda Stahr testified at the hearing. In a decision dated February 10, 2012, the ALJ denied Jones' claims. The ALJ determined that Jones was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing her past relevant work as a checker or cleaner. Jones appealed the ALJ's decision. On February 12, 2013, the Appeals Council denied Jones' request for review. Consequently, the ALJ's February 12, 2012 decision was adopted as the Commissioner's final decision.

On April 15, 2013, Jones filed this action for judicial review. The Commissioner filed an Answer on August 7, 2013. On September 6, 2013, Jones filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is

not disabled and that she is functionally capable of performing her past relevant work as a checker or cleaner. On October 31, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On July 1, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not

3

only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's

conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Jones' Education and Employment Background

Jones was born in 1979. She completed the eighth grade. At the administrative hearing, Jones testified that she got "really bad" grades and school "wasn't [her] thing." She stated that she received help in the resource room with reading because she has difficulty comprehending information that she reads. However, in response to questioning from the ALJ, Jones stated that she could perform basic mathematic equations.

The record contains a detailed earnings report for Jones. The report covers the time period of 1993 to 2011. In 1995, Jones earned $2,276.88, but only earned $32.50 in 1996. From 1997 to 2009, she earned between $1,118.06 (2002) and $20,085.62 (2004). She has no earnings since 2010.

### B. Administrative Hearing Testimony

#### 1. Jones' Testimony

At the administrative hearing, Jones' attorney asked Jones, of all her various health difficulties, which one affected her the most. Jones replied that heart problems and chronic pain affected her the most. She indicated that her chronic pain consisted of joint, muscle, and abdominal pain. Jones' attorney inquired how Jones' heart condition affected her ability to function. Jones explained that "I am so tired. There [are] days I don't even feel like crawling out of bed. I get anxiety when I try to go to sleep at night because I'm not sure if I'm going to wake up."[1]

Next, Jones' attorney asked Jones to discuss her mental health difficulties. Jones testified that she suffers from depression and anxiety. According to Jones, her depression causes her to become "really fatigued. I ache. I get blue. I'll start crying for no apparent

---

[1] Administrative Record at 38.

reason, or I get tempered easily and I yell."[2]  Jones stated that she has been prescribed

Wellbutrin and Trazodone.  She indicated that "[i]f I miss a dose, I become angered easily

and very moody."[3]

Jones' attorney also inquired about Jones' living arrangements and daily activities:

> Q:  Okay.  And you live with a number of people, don't you?
>
> A:  Yes.  I live with my mother and my sister and my kids.  And, which, my mother, she helps me out a lot.
>
> Q:  What's she have to help you with?
>
> A:  She does, mainly -- she does the cleaning and the cooking most of the time.  I try to help her because I feel useless.  I feel helpless.  So I try to help her out, but if I try to do dishes and I'm standing at the sink, I get sharp severe pain in my lower back to where I'm in tears.  So I have to take several breaks throughout.

(Administrative Record at 43-44.)  Jones' attorney also questioned Jones about her

functional abilities:

> Q:  Okay.  So with the combination of all your problems, do you have problems with concentration, paying attention, focusing?  Is that hard for you?  Can you sit down and watch a half-hour TV show?
>
> A:  No, I cannot.
>
> Q:  Okay.
>
> A:  Due to the pain and then just -- I don't know.  I just -- I try but I can't.
>
> Q:  How about just lifting and carrying?  Are you limited in how much you can pick up?
>
> A:  Yes, I am.
>
> Q:  What's the most you can pick up?
>
> A:  I don't know.  Maybe five pounds.
>
> Q:  Okay.  And what's the problem with it?  Are you weak?  Are you --

---

[2] *Id.* at 42.

[3] *Id.*

A: I'm weak. I get back pain.
Q: Any trouble using your hands and fingers?
A: Yeah. They get weak. They fall asleep on me. They get really crampy.
Q: Okay.
A: I can't even sit down and write a letter because my hand cramps.

(Administrative Record at 46-47.)

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Melinda Stahr with a hypothetical for an individual who is:

> limit[ed] . . . as follows: She could lift 20 pounds occasionally, 10 pounds frequently. She could only occasionally balance, stoop, crouch, kneel, crawl, and climb. She could not do repetitive gross and fine manipulation. And she couldn't tolerate extremes of heat, cold, humidity, dust, or fumes.

(Administrative Record at 51.) The vocational expert testified that under such limitations, Jones could perform her past relevant work as a checker or cleaner. The ALJ provided the vocational expert with a second hypothetical which was identical to the first hypothetical, except that the individual "can't be on her feet more than two hours per day. She's going to require two or more absences per month and two or more unscheduled breaks per day when she is there."[4] The vocational expert testified that under such limitations, Jones would be precluded from competitive employment.

### C. *Jones' Medical History*

On April 19, 2010, Jones was admitted to the University of Iowa Hospitals and Clinics ("UIHC") for chest pain and emergent cardiac catheterization. Dr. Grace

---

[4] Administrative Record at 52.

7

Ayafor, M.D., reviewed Jones' medical history and the symptoms immediately preceding her admission to the UIHC. Specifically, Dr. Ayafor noted that:

> [Jones] has a history of chronic abdominal and substernal chest pain attributed to esophageal spasms. These started after her duodenal perforation in 2007, initially occurred every couple months, but have become more frequent and severe in the past month, during which she has had about 5 episodes. She describes them as substernal, crushing, and diaphoresis, shortness of breath, and nausea. These are not necessarily exertional, but she is very sedentary.
>
> On Saturday (2 days) she presented to her local emergency room because of substernal chest pain which she thought was due to esophageal spasms, but was more severe than usual and associated with left arm pain, which was new. EKG then showed an incomplete right bundle branch block. . . . She was sent home and asked to return to the ER if her symptoms persisted. She went home and continued to have intermittent substernal chest pain. Last night . . . the pain got very severe and she developed pounding in her chest. She decided to go back to the emergency room. When she presented this time, an EKG showed anterolateral ST segment elevations with reciprocal changes in inferior leads. . . . She was given sublingual nitroglycerin x3 without resolution of her pain and so started on nitro drip. . . . She was sent here for emergent cardiac catheterization. Cardiac catheterization showed 100% proximal LAD occlusion to which a bare metal stent was placed. Her other coronary vessels were unremarkable.

(Administrative Record at 660.) Jones was discharged on April 21, 2010, and treated with medicine, cardiac diet, and cardiac rehabilitation.

On July 30, 2010, Jones met with Michele M. Walker, LISW, at the Mental Health Clinic of Tama County for an initial mental health evaluation. Walker noted that Jones presented with symptoms of depression and anxiety "that may be exacerbated by her multiple medical issues including her recent diagnosis of coronary heart disease following

a damaging "heart attack" on April 19th of this year."[5] Jones reported to Walker that her energy level was poor and she felt guilty about this. Jones also reported that since her heart difficulties, she felt "significantly more 'blue' (sad and depressed), is easily frustrated and short-tempered with her children, and she sometimes has trouble going to sleep at night."[6] Jones stated that she suffers from chronic thoughts and fears of dying in her sleep. Upon examination, Walker diagnosed Jones with depressive disorder. Walker recommended meeting with a psychiatrist for medical management and therapy as treatment.

On September 8, 2010, Jones was referred by Disability Determination Services ("DDS") to Dr. Brian J. Steiner, Psy.D., for a consultative examination. In reviewing Jones' medical history, Dr. Steiner noted that:

> In general [Jones'] health is poor. She has Barrett's Esophagitis, heart disease, and sleep apnea. She also has a history of depression. She has had her gallbladder removed, an appendectomy, a C-section, and three endoscopes, a colonoscopy, an ERCP for duodenal perforation, a heart catheterization, and another endoscope done recently.

(Administrative Record at 895.) Jones described her typical day to include: (1) spending the morning "sitting around watching television"; (2) spending the afternoon performing activities of daily living and helping out "a little" with household chores; and (3) in the evening watching television after supper before going to bed around 9:00 p.m. Jones noted that she "sleeps okay on the Trazodone, but without it not well."[7] Upon examination, Dr. Steiner found Jones' intellectual functioning to be "at least" average.

---

[5] Administrative Record at 883.

[6] *Id.*

[7] Administrative Record at 897.

Dr. Steiner diagnosed Jones with major depression and multiple health concerns. Dr. Steiner concluded that:

> Based upon the evaluation results, it appears that [Jones] is able to remember and understand instructions, procedures, and locations. She appears to be able to carry out instructions by maintaining attention, concentration, and pace. She is able to interact appropriately with supervisors, coworkers, and the public. In addition, she appears to be able to respond appropriately to changes in the workplace.

(Administrative Record at 898.)

On October 4, 2010, Dr. Sandra Davis, Ph.D., reviewed Jones' medical records and provided DDS with a Psychiatric Review Technique assessment for Jones. Dr. Davis diagnosed Jones with major depression. Dr. Davis determined that Jones had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Davis concluded that "there was no evidence of depression prior to her [Mental Health Clinic of Tama County] intake on 7-30-10; the record is insufficient prior to that time. At the [consultative examination], [Jones] appears nonsevere with respect to mental, emotional issues."[8]

On October 6, 2010, Dr. Lawrence Staples, reviewed Jones' medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Jones. Dr. Staples determined that Jones could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Staples found that Jones could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, and frequently balance. Dr. Staples also found that Jones was limited

---

[8] Administrative Record at 911.

in her gross and fine manipulation. Dr. Staples opined that Jones should avoid constant activity with her hands and wrists. Dr. Staples further opined that Jones should avoid concentrated exposure to extreme cold and fumes, odors, dusts, gases, and poor ventilation. Dr. Staples found no visual or communicative limitations.

On October 22, 2010, at the request of Jones' attorney, Dr. Gardar Sigurdsson, Jones' treating cardiologist, filled out a "Cardiac Residual Functional Capacity Questionnaire" for Jones. Dr. Sigurdsson diagnosed Jones with ischemic cardiomyopathy. Dr. Sigurdsson opined that Jones' prognosis was "fair." Dr. Sigurdsson stated that Jones' symptoms included: chest pain, shortness of breath, fatigue, weakness, and dizziness. With regard to Jones' functional abilities, Dr. Sigurdsson determined that Jones: (1) could walk 2 blocks without rest or severe pain; (2) could stand/walk less than 2 hours in an eight-hour workday; (3) could sit about 4 hours in an eight-hour workday; (4) would need 3-6 unscheduled breaks during an eight-hour workday; (5) could frequently lift less than 10 pounds and occasionally lift 10 pounds; and (6) could occasionally twist, but rarely stoop, crouch, or climb stairs. Dr. Sigurdsson also found that Jones should avoid all exposure to extreme cold, extreme heat, high humidity, wetness, perfumes, fumes, odors, gases, dust, and chemicals. Lastly, Dr. Sigurdsson opined that Jones would miss more than four days per month due to her impairments or treatment for her impairments.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Jones is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment

> meets the criteria of any Social Security Income listings,
> (4) whether the impairment prevents the claimant from
> performing past relevant work, and (5) whether the
> impairment necessarily prevents the claimant from doing any
> other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at

590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process);

*Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R.

§§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in

the evaluation of disability, the process ends and the claimant is determined to be not

disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d

at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful
> activity. If so, the claimant is not disabled. Second, the ALJ
> determines whether the claimant has a severe medical
> impairment that has lasted, or is expected to last, at least
> 12 months. Third, the ALJ considers the severity of the
> impairment, specifically whether it meets or equals one of the
> listed impairments. If the ALJ finds a severe impairment that
> meets the duration requirement, and meets or equals a listed
> impairment, then the claimant is disabled. However, the
> fourth step asks whether the claimant has the residual
> functional capacity to do past relevant work. If so, the
> claimant is not disabled. Fifth, the ALJ determines whether
> the claimant can perform other jobs in the economy. If so, the
> claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant

"bears the burden of demonstrating an inability to return to [his] or her past relevant

work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*,

524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden

shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC

[(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Jones had not engaged in substantial gainful activity since January 1, 2008. At the second step, the ALJ concluded from the medical evidence that Jones has the following severe impairments: coronary artery disease status post stent placement, perforated duodenum status post surgical repair, bilateral carpal tunnel syndrome, and endometriosis.[9] At the third step,

---

[9] In her brief, Jones argues that the ALJ erred by not finding her back pain to be a severe impairment. *See* Jones' Brief (docket number 10) at 19-21. However, in his decision, the ALJ addressed Jones' allegation of an impairment involving her back and spine:

> An impairment must result from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only a statement of symptoms. See 20 CFR 404.1508 and 416.908. Numerous diagnostic tests, such as MRI's, X-rays and physical examinations, have not revealed any significant back impairments (Exhibits 3F/8, 10; 9F/25; 17F/15; 35F/9). In the absence of medical evidence as described above, [Jones'] back and neck pain are found to be non-medically determinable.

(continued...)

13

the ALJ found that Jones did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Jones' RFC as follows:

> [Jones] has the residual functional capacity to perform light work . . . except she could be limited to lifting 20 pounds occasionally and 10 pounds frequently. She could only occasionally balance, stoop, crouch, kneel, crawl and climb. [She] could not perform repetitive gross and fine manipulation with the bilateral upper extremities. She could not tolerate extremes of heat, cold, humidity, dust or fumes.

(Administrative Record at 18.) Also at the fourth step, the ALJ determined that Jones was able to perform her past relevant work as a checker or cleaner. Therefore, the ALJ concluded that Jones was not disabled.

### B. Objections Raised By Claimant

Jones argues that the ALJ erred in two respects. First, Jones argues that the ALJ failed to properly consider and evaluate the opinions of her treating cardiologist, Dr. Sigurdsson. Second, Jones argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability.

---

[9](...continued)

(Administrative Record at 15.) The Commissioner argues that the "ALJ appropriately found that given the absence of any medical evidence confirming the severity of [Jones'] back impairment, that impairment cannot be considered severe." Commissioner's Brief (docket number 11) at 9. The Court agrees with the Commissioner. The ALJ specifically points out medical evidence in the record, including diagnostic laboratory findings which indicate that Jones' alleged back pain is not severe. *See* Administrative Record at 15 (exhibits 3F, 9F, 17F, 35F as discussed in the ALJ's consideration of Jones' back pain). Moreover, while Jones directs the Court to various medical records in her brief where she complained of back and neck pain, she offers no evidence of signs, symptoms, or laboratory findings to support a finding that her back pain was a severe impairment. *See* 20 C.F.R. §§ 404.1508, 416.908. Accordingly, the Court determines that the ALJ's determination that Jones' back pain is not a severe impairment is supported by substantial evidence on the record, and Jones' argument on this issue is without merit.

### 1. Dr. Sigurdsson's Opinions

Jones argues that the ALJ failed to properly evaluate the opinions of her treating cardiologist, Dr. Sigurdsson. Specifically, Jones argues that the ALJ's reasons for discounting Dr. Sigurdsson's opinions are not supported by substantial evidence in the record. Jones maintains that this matter should be remanded to allow the ALJ to properly consider Dr. Sigurdsson's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC

assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v.*
*Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among
various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to
statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The
regulations also require an ALJ to give "good reasons" for rejecting statements provided
by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009)
("The regulations require the ALJ to 'always give good reasons' for the weight afforded
to the treating source's opinion.") (citation omitted).

In his decision, the ALJ addressed the opinions of Dr. Sigurdsson as follows:

> The undersigned has read and considered the Cardiac Residual
> Functional Capacity Questionnaire by Dr. Signurdsson on
> October 22, 2010. The checklist-style form appears to have
> been completed as an accommodation to [Jones] and includes
> only conclusions regarding functional limitations without any
> rationale for those conclusions. The doctor also opines [Jones]
> has extreme functional limitations that are not supported by
> corresponding medical evidence. For example, he reported
> [Jones] could only walk two city blocks without rest or severe
> pain. This limitation is inconsistent with the records, which
> show [Jones] was walking up to three and a half miles with no
> problems. In addition, treatment notes from October 2010, the
> same month as the doctor's questionnaire, [Jones] reported
> going out dancing with her friends. The doctor apparently
> relied quite heavily on the subjective report of symptoms and
> limitations provided by [Jones], and seemed to uncritically
> accept as true most, if not all, of what [she] reported. Yet, as
> explained elsewhere in this decision, there exist good reasons
> for questioning the reliability of [Jones'] subjective complaints.

(Administrative Record at 23.) Having reviewed the entire record, the Court finds that the
ALJ properly considered and weighed the opinion evidence provided by Dr. Sigurdsson.
The Court also finds that the ALJ provided "good reasons" for rejecting Dr. Signurdsson's

opinions.[10] *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967; *see also Wildman*, 596 F.3d at 964 (providing that a checklist questionnaire, generality in answering the questionnaire, and lack of support for a treating source's assessment in a questionnaire limit the evidentiary value of such questionnaires); Administrative Record at 20-21 (detailed discussion and analysis of Jones' medical record with regard to her cardiac impairments provided by the ALJ). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## 2. *Credibility Determination*

Jones argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Jones maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly

_____

[10] The Court notes that in discussing Dr. Signurdsson's opinions, the ALJ further speculated that:

> The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

(Administrative Record at 23.) The Court finds such reasoning speculative and unpersuasive. Thus, the Court disregards this line of reasoning in making its determination that the ALJ properly considered and weighed the opinion provided by Dr. Sigurdsson.

considered Jones' testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*,

353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ outlines Jones' long history of cardiac impairment and points out that "the record reflects that the [stent placement] surgery was generally successful in relieving the symptoms."[11] The ALJ also points out that following her stent placement, Jones succeeded in cardiac rehabilitation and had very little difficulty exercising.[12] The ALJ determined that "the objective findings in this case fail to provide strong support for the allegations of symptoms, which produce limitations on [Jones'] ability to perform basic work activities."[13] In summary, the ALJ found that:

> Overall, the objective evidence does not demonstrate disabling cardiac or gastrointestinal symptoms. The records show [Jones'] episodes of chest pain are typically rather brief, yet she goes to the emergency room generally as a precautionary measure after the onset of symptoms. Furthermore, [Jones']

---

[11] Administrative Record at 20.

[12] Administrative Record at 20-21.

[13] *Id.* at 21.

> reported physical abilities following the placement of her stent are in contrast to her reported symptoms at the hearing. The records showed [Jones] was having few problems walking up to three miles per day, yet at the hearing, she reported extreme fatigue. While this does not necessarily indicate [Jones] deliberately attempted to mislead, it does erode the credibility of [her] allegations.

(Administrative Record at 21.) The ALJ also found that Jones' reported activities of daily living were inconsistent with her allegations of total disability or a finding of total disability.[14] In conclusion, the ALJ determined that:

> based upon the substantial weight of the objective evidence, [Jones'] course of treatment, her level of daily activity, her work history, the undersigned finds that [Jones] retains the residual functional capacity for less than the full range of light work described above. This residual functional capacity is based on the entire medical record and adjusted to give [Jones] the benefit of the doubt with regard to her allegations of disability.

(Administrative Record at 23.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Jones' treatment history, medical history, functional restrictions, activities of daily living, and work history in making his credibility determination.[15] Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Jones' subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v.*

---

[14] *See* Administrative Record at 22 (providing detailed analysis of the inconsistencies between Jones' subjective allegations and both her medical records and the record of her activities of daily living).

[15] *See* Administrative Record at 19-23.

*Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Jones' subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### VI. CONCLUSION

The Court finds that the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Dr. Sigurdsson. The Court also finds that the ALJ properly determined Jones' credibility with regard to her subjective complaints of pain and disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

### VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;

2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this ___9th___ day of January, 2014.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA